## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IVAN CHEN,                                    )
                                              )
                    Plaintiff,                )
                                              )          CIVIL ACTION
v.                                            )
                                              )          No. 13-2358-CM
DILLARD STORE SERVICES, INC.,                 )
                                              )
                    Defendant.                )
_____ )

## MEMORANDUM AND ORDER

Pro se plaintiff Ivan Chen brings suit against defendant Dillard Store Services, Inc.

("Dillard's"), claiming defamation (Counts I and II), negligent supervision and training (Count III),

negligent infliction of emotional distress (Count IV), and retaliation under 42 U.S.C. § 1981 (Count

V).  This matter is before the court on Defendant's Motion for Summary Judgment (Doc. 99) filed

April 17, 2015.  For the reasons stated below, the court grants the motion.

**I.  Legal Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine

issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  A "genuine" factual dispute requires more than a mere scintilla of evidence.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the initial

burden of showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  In making the summary judgment determination, the court must view the

evidence and reasonable inferences in the light most favorable to the nonmoving party.  *Adler v. Wal-*

*Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986)).  However, the nonmoving party may not rest on the pleadings

but must set forth specific facts. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252. The court is mindful of plaintiff's pro se status and, therefore, liberally construes his pleadings. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). But this generous review stops short of excusing procedural flaws or generating arguments on his behalf.

## II.  Facts

### A.  Preliminary Evidentiary Issues

Plaintiff submits many facts in opposition to defendant's motion for summary judgment which the court does not consider because they lack any evidentiary support. First, the court cannot consider unauthenticated documents in determining a summary judgment motion. *See Bell v. City of Topeka, Kan.*, 496 F. Supp. 2d 1182, 1184 (D. Kan. 2007). Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 govern the procedure for summary judgment motions in the District of Kansas. Under the rules, the non-movant must "set out specific facts showing a genuine issue for trial" through admissible evidence. Fed. R. Civ. P. 56(e)(1). Such evidence "must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions." D. Kan. R. 56.1. The affidavits and declarations supporting facts opposing a motion for summary judgment must be made on personal knowledge and set forth facts that would be admissible in evidence. *Id.*; Fed. R. Civ. P. 56(c)(4). Furthermore, "[w]here facts referred to in an affidavit or declaration are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached." D. Kan. R. 56.1. In many instances in plaintiff's response, he fails to comply with these

requirements.  Therefore, the court declines to consider plaintiff's unauthenticated or unsupported evidence in its decision.  *See Elrod v. Walker*, No. 06-3115-SAC, 2011 WL 6372881, at *2 (D. Kan. Dec. 20, 2011) (deeming admitted material facts set forth by defendant in support of summary judgment motion which pro se plaintiff failed to oppose with evidence that complied with Fed. R. Civ. P. 56 and D. Kan. R. 56.1); *cf. Morre Bey* v. *Douglas Cnty. Corr. Facility*, No. 08-3036-JAR, 2008 WL 2783140, at *1 (D. Kan. July 15, 2008) (declining to consider unauthenticated or unsupported evidence proffered by plaintiff in deciding plaintiff's motion for summary judgment).

Although pro se, plaintiff is familiar with these rules and requirements, as shown by plaintiff's own frequent citation of them throughout his briefing.  (*See, e.g.*, Doc. 10 at 1, 13–14, 16, 19–22, 24, 26 (in which plaintiff cites Fed. R. Civ. P. 56 and D. Kan. R. 56.1); Doc. 101 (attaching copies of Fed. R. Civ. P. 56 and D. Kan. R. 56.1 and noting service by email to plaintiff here).); *Elrod*, 2011 WL 6372881, at *1.  "Although the Court holds pro se filings to a less stringent standard than formal pleadings drafted by lawyers, it does not assume the role of advocate for a pro se litigant; he must follow the same rules that govern all other litigants."  *Drape v. UPS, Inc.*, No. 12-2172-KHV, 2013 WL 6804214, at *1 (D. Kan. Dec. 23, 2013) (citing *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994); *Hall*, 935 F.2d at 1110).

As another preliminary matter, as evidentiary support for some of the facts presented, defendant provided an arbitrator's Opinion and Final Award, Exhibit 5 to plaintiff's deposition.  (*See* Doc. 100 at 1 n.3.)  As part of this case's procedural history, the arbitrator decided claims in two other related lawsuits plaintiff filed.  However, the arbitrator did not decide the specific issues that are before the court now.  (*See* Doc. 49.)  Defendant claims that the doctrine of collateral estoppel warrants acceptance of certain underlying facts contained within the arbitrator's opinion because those facts were previously litigated and decided.  (*See* Doc. 100 at 1 n.3.)  Although defendant did not provide

enough information for the court to determine whether collateral estoppel warrants finding these facts uncontroverted, the facts are not material to plaintiff's claims in this case.[1]  The court only includes them to provide background and context; it does not depend on the facts in reaching its findings or holdings in this opinion.

Accordingly, the following facts are uncontroverted, are immaterial to plaintiff's present claims and presented only as background, or if controverted by admissible evidence that complies with Fed. R. Civ. P. 56 and D. Kan. R. 56.1, are construed in the light most favorable to plaintiff.  *See* Fed. R. Civ. P. 56(e)(2) (stating that if a party fails to properly address another party's assertion as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion).

## B.  Plaintiff's Employment, Relationship with Julia Phares, and Termination

Defendant employed plaintiff from 1995 until August 23, 2011, when defendant terminated plaintiff's employment after receiving a complaint from Julia Phares, a sales associate for defendant's Oak Park Mall store and plaintiff's co-worker.  Plaintiff later obtained employment with Jos. A. Bank in October 2011, and he continues employment at Jos. A. Bank.

Defendant employed Julia Phares as a sales associate beginning in 2010.  Plaintiff and Ms. Phares began a personal relationship outside of work and exchanged numerous emails between 2010 and 2011.  In April 2011, Ms. Phares asked plaintiff to stop emailing her, but he continued to do so. Plaintiff telephoned Ms. Phares at home.  Ms. Phares complained to defendant in May 2011 about plaintiff's unwelcome emails, telephone calls, and attention while at work.  Defendant met with

---

[1] Collateral estoppel "'precludes a court from reconsidering an issue previously decided in a prior action where (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.'"  *Id.* (quoting *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006)).  Here, as the party asserting the defense, defendant bears the burden to show that the issues were actually litigated and determined in the former action.  *Id.*

plaintiff and instructed him to keep his personal relationship with Ms. Phares out of the workplace, and warned him he should stop sending emails to her and that his job was in jeopardy if he continued to harass her.  Plaintiff continued sending emails and directing attention to Ms. Phares while at work, which made Ms. Phares feel uncomfortable, so Ms. Phares complained a second time about plaintiff's unwelcome conduct.

On August 13, 2011, an incident between plaintiff and Ms. Phares occurred where numerous witnesses heard plaintiff use a loud voice to address Ms. Phares, who afterwards left defendant's store during working hours.  Customers were in the vicinity when the incident occurred.  After the incident, Ms. Phares complained to her supervisor about plaintiff's behavior.  Plaintiff's account of the August 13, 2011 incident was that on July 14, 2011, Ms. Phares had told him that a customer of defendant's had an affair with a former employee of defendant.  Plaintiff claims that Ms. Phares was a new employee at the time (although she had been working there since 2010), and he thought it unlikely that she had firsthand knowledge about the affair.  Plaintiff states that he asked Ms. Phares "about the truthfulness of her defamatory remark on August 13, 2011, [and Ms. Phares] got upset and went to tattle on [plaintiff] to her supervisor claiming that [he] yelled at her."[2]  (Doc. 105 at 67 ¶ 9.) Regardless, Ms. Phares's complaint led to defendant's investigation of the incident, and defendant's store manager at the time, Jim Macumber, terminated plaintiff's employment on August 23, 2011.

**C.  Plaintiff's First Lawsuit Against Dillard's**

On May 14, 2012, plaintiff filed a lawsuit in the District Court of Johnson County, Kansas alleging racial harassment, disparate treatment, and retaliation in violation of 42 U.S.C. § 1981; racial discrimination, sexual harassment, sexual favoritism, unequal treatment and protection, retaliation, and

---

[2] In plaintiff's affidavit and briefing, he continually describes the customer using unique identifying characteristics, which the court believes is improper and unnecessary to consider the issues presented in this lawsuit.

pattern of discrimination under Title VII of the Civil Rights Act of 1964.  (*See* Doc. 1-1 in Case No.

12-2366-CM.)  Defendant removed the case to this court.  (*See id.*)

### D.  Plaintiff's Trip to Dillard's on July 13, 2012 and Ms. Phares's Comment

On July 13, 2012, for the first time since his termination, plaintiff shopped at defendant's Oak

Park Mall store.  Plaintiff shopped without interference.  Defendant states that sometime later, Tim

Peterson, a sales associate, learned that plaintiff had been in the store, which he discussed with Ms.

Phares.  He says Ms. Phares discussed her "impression," as he characterized it, regarding whether

plaintiff was barred from the store.  Mr. Peterson adopts Ms. Phares's recollection of the conversation

in her affidavit that she provided in related litigation.  It describes the conversation as follows.

> On or about July 13, 2012, [Ms. Phares] mentioned to Tim Peterson that she understood
> that Plaintiff had been barred from Dillard's store subsequent to his being fired in 2011
> and that security was to be called in the event he entered the store.  To the best of [Ms.
> Phares's] memory[,] that information was conveyed to [her] by James Macumber, the
> Dillard's manager who fired Plaintiff.
>
> [Ms. Phares] mentioned to a co-worker, Tim Peterson, that she was under the
> impression that Plaintiff was not allowed in the store.

(Doc. 100-5 at 2 ¶ 8.)  Although Mr. Peterson apparently does not remember the exact words Ms.

Phares used, he states he has no reason to disbelieve her account.  Ms. Phares had told others she was

fearful of plaintiff and was considering obtaining a restraining order against him in July 2012.  On

occasion, Ms. Phares shared with Mr. Peterson that she was fearful of plaintiff, and Mr. Peterson

thought her feelings were reasonable given "the obsessive thoughts of [Ms. Phares] plaintiff shared

with [Mr. Peterson.]"  (Doc. 100-5 at 3.)  Mr. Peterson did not believe plaintiff was actually barred

from the store or that he should call security if plaintiff entered the store.  Rather, they were discussing

whether plaintiff was actually barred from the store.  Mr. Peterson did not understand Ms. Phares to

encourage him to call security if plaintiff entered the store.  Prior to Mr. Peterson's communication

with Ms. Phares, he knew (from plaintiff) that plaintiff's employment had been involuntarily

terminated.  Nothing Ms. Phares said to Mr. Peterson made Mr. Peterson believe plaintiff had engaged in criminal activity.  Mr. Peterson states that Ms. Phares's comment did not cause Mr. Peterson to think less highly or differently of plaintiff personally or professionally, and did not impact positively or negatively his view of plaintiff or plaintiff's reputation.  Mr. Peterson never had a concern for plaintiff's safety upon entering defendant's store or otherwise.  Mr. Peterson was the only one present when he and Ms. Phares had this conversation.   Following the conversation with Ms. Phares, Mr. Peterson did not believe that plaintiff was actually barred from the store.

### E.  Plaintiff's Learning of Ms. Phares's Comment

Plaintiff later learned that Ms. Phares had made a comment to Mr. Peterson about Ms. Phares's belief that defendant might be barred from the store.  Plaintiff explains the event as follows.  Plaintiff states that when he was shopping on July 13, 2012, Mr. Peterson was on his way out for lunch and saw plaintiff.  Mr. Peterson disputes this.  Later that evening, plaintiff states that Mr. Peterson called him and "warned [him] to be careful about going to Dillard's."  Although Mr. Peterson does not dispute having the discussion with Ms. Phares, he disputes that he called plaintiff or otherwise discussed it with him.  Nonetheless, plaintiff alleges that during this telephone call, Mr. Peterson told him that after his lunch, he mentioned to Ms. Phares that plaintiff had been shopping at the store earlier.  Plaintiff alleges that Mr. Peterson then told him that Ms. Phares had told Mr. Peterson that "Ivan was told not to enter Dillard's building.  If he comes to Dillard's store, we are supposed to call security."  (Doc. 105 at 66.)  Plaintiff states that his wife, Monica Chen, witnessed the telephone conversation.  At some point, plaintiff's wife told their family and closest friends that plaintiff was terminated and had been barred from defendant's store.

**F.  Defendant's Attempts to Inform Plaintiff he was not Barred from Shopping at Dillard's**

On July 14, 2012, the next day, plaintiff asked defendant's counsel whether he was allowed to enter defendant's store, and on July 16, 2012, defendant's counsel advised him that they were unaware of a trespass order being issued against him.  In the meantime, on Sunday, July 15, 2012, plaintiff wrote a letter to defendant's management which he later mailed, which stated, in part, "Phares made a comment to [an] associate that [plaintiff] was told not to come to Dillard's.  If he does, she and other associates will call the [sic] security."  (Doc. 95 at 2 ¶ 3.)  On July 19, 2012, defendant's counsel reiterated to plaintiff via email that he was not prohibited from shopping in defendant's store.  Plaintiff again inquired on July 20, 2012.  On July 24, 2012, defendant's counsel responded again, "In my prior two emails I informed you that Dillard's has not prohibited you from shopping in its store."  Despite this, and although plaintiff knew his wife had told her friends he was barred from Dillard's, he never asked his wife to quit telling people that he was barred.  At the time of her deposition, Ms. Chen continued to believe plaintiff was barred from entering defendant's stores.

**G.  Plaintiff's Second Lawsuit Against Dillard's**

On August 6, 2012, plaintiff filed a second lawsuit in the District Court of Johnson County, Kansas, alleging Dillard's was liable for Ms. Phares's defaming plaintiff by telling a member of management that plaintiff yelled at Ms. Phares, which ultimately led to plaintiff's termination.  (*See* Doc. 1-1 in Case No. 12-2517-CM.)  The petition also alleges that the manager, Mr. Macumber, then libeled plaintiff by writing the false statement down and defamed plaintiff by telling an employee that plaintiff yelled at Ms. Phares in front of another employee and that plaintiff said Ms. Phares was a "crazy lady."  (*See id.*)  Defendant removed the case to this court, and on August 15, 2012, the court consolidated those two cases, designating the first-filed lawsuit, Case No. 12-2366, as the lead case. (*See* Docs. 1, 10 in Case No. 12-2517-CM.)

**H.  Plaintiff's Trip to Dillard's and Conversation with Jill Loeffert and Julie Davis on August 13, 2012**

On August 13, 2012, plaintiff returned to defendant's Oak Park Mall store.  Plaintiff talked with one of defendant's sales associates, Jill Loeffert, for about twenty minutes.  Ms. Loeffert states she was uncomfortable with comments she said plaintiff made to her about defendant and its former store manager, Mr. Macumber, whom she liked and who had recently retired.  Plaintiff was recounting that another employee had shared with him that Mr. Macumber was told to resign or retire, and Ms. Loeffert understood plaintiff to insinuate that incidents surrounding plaintiff's termination had resulted in Mr. Macumber's being fired.  As the conversation progressed, Ms. Loeffert decided that she did not want to be seen talking to plaintiff because she did not want to convey the impression to others that she was aligned with him.  She states she told plaintiff she could not talk to him anymore because she was worried about losing her job.  Ms. Loeffert said in her affidavit that she told plaintiff that she did not think plaintiff should be in the store saying what he was saying, but she could not remember whether she said "should" or "not supposed to."  Regardless, Ms. Loeffert stated that she was trying to get him to leave her area, and her opinion was that he should not be in the store for the purpose of disparaging the former store manager.  Another sales associate, Julie Davis, approached Ms. Loeffert and plaintiff, and observed that Ms. Loeffert was flushed, which concerned her.  She decided to stay nearby, and she followed-up on one of Ms. Loeffert's comments by saying, "Yeah, you better leave right now."  Plaintiff left, saying he was going upstairs.  Ms. Loeffert did not watch to see where he went.  Ms. Loeffert, Ms. Davis, and plaintiff are not aware of anyone else who heard the comments made by Ms. Loeffert or Ms. Davis.  Neither Ms. Loeffert nor Ms. Davis had a different view of plaintiff, either positive or negative, as a result of the comments each made during that conversation.  During that conversation with plaintiff, neither Ms. Loeffert nor Ms. Davis were aware that plaintiff had filed a lawsuit or had asserted claims under 42 U.S.C. § 1981 by this time.

At his deposition, plaintiff did not recall the exact nature of most of his conversation with Ms. Loeffert and Ms. Davis.  In the pretrial order, plaintiff alleges that on August 13, 2012, Ms. Loeffert "told plaintiff in front of another associate, Julie Davis, that plaintiff was supposed not to enter Dillard's.  Both employees urged plaintiff to leave the store immediately."  (Doc. 95 at 9.)  In an affidavit, plaintiff states that

> Loeffert told me in front of another associate Julie Davis that I was supposed not to come to Dillard's.  I asked Loeffert if other associates also knew or believed so. Loeffert said, "Yes."  Loeffert said she worried about losing her job by speaking to me. She kept telling me to leave the store.  Davis agreed with her and told me to leave the store immediately.

(Doc. 105 at 66 ¶ 7.)[3]

### I. Defendant's Further Attempts to Inform Plaintiff he was not Barred from Shopping at Dillard's

On September 19, 2012, plaintiff sent an email to defendant's counsel concerning his August 13, 2012 visit to defendant's store.  In that email, plaintiff did not identify the associates with whom he had interacted, nor did he request that defendant take any action.  Defendant's counsel requested the names of the associates and suggested that if plaintiff had an incident at the store, he, "like any other customer[,] [is] welcome to request to speak with management at the time."  Defendant's counsel suggested that such an approach "may have brought immediate resolution" to his concern.  Plaintiff eventually identified Ms. Loeffert and Ms. Davis, and defendant spoke with them.  Ms. Loeffert and Ms. Davis both confirmed that they had never heard anything about plaintiff's being barred.  Ms. Loeffert thought plaintiff was inappropriate, and she was uncomfortable interacting with him.  On

---

[3] Throughout his briefing, plaintiff repeatedly states that Ms. Loeffert told him that "she *heard* that plaintiff was supposed not to enter Dillard's.  Plaintiff should just leave the store immediately." Plaintiff did not include in his affidavit that Ms. Loeffert said that she heard the statement from some other source, plaintiff did not include that fact in the pretrial order, and it is inconsistent with plaintiff's sworn deposition testimony.  Therefore, the court will not consider that Ms. Loeffert *heard* the statement from some other source.

October 29, 2012, plaintiff again inquired of defendant's counsel whether he was allowed in the store, and defendant's counsel again responded, "Dillard's position remains consistent with our prior communications."

Plaintiff admits that none of the conduct by any of the employees was accompanied by or resulted in a physical injury to him.  Plaintiff testified during his deposition that he did not feel that any of defendant's employees other than Ms. Phares were "out to get" him or trying to be malicious.

### J.  Arbitration Proceedings in Related Cases

On September 19, 2012, the court granted defendant's motion to compel arbitration in the two consolidated cases, stayed the proceedings, and ordered the parties to arbitration.  (Doc. 20 in case No. 12-2366-CM.)  On October 18, 2012, plaintiff filed his Notice of Intent to Arbitrate with the American Arbitration Association ("AAA") and filed his AAA Claim.  (*See* Doc. 9-1 in Case No. 13-2358.)  In his AAA Claim, plaintiff raised the claims alleged in the consolidated cases and raised a new employer negligence claim for the first time.  (*See id.* at 59–60.)  The arbitrator held an evidentiary hearing in the arbitration on July 1 and 2, 2013.  (Doc. 28 at 2 in Case No. 13-2358.)  On August 1, 2013, the AAA issued its Opinion and Final Award, denying all of plaintiff's claims.  (Doc. 15-1 in Case No. 13-2358.)

### K.  Procedural History of Plaintiff's Third Lawsuit Against Dillard's

In the meantime, on June 20, 2013, plaintiff filed this case, his third lawsuit against Dillard's, in the District Court of Johnson County, Kansas.  This was after plaintiff filed his AAA Claim on October 18, 2012 and before the evidentiary hearing before the arbitrator on July 1 and 2, 2013.  Defendant removed this case on July 18, 2013, after the evidentiary hearing.  (*See* Doc. 1.)  On July 23, 2013, defendant filed a motion to dismiss or in the alternative, to consolidate the cases.  (Doc. 8.)  On July 26, 2013, the court denied defendant's motion without prejudice pending a decision by the

AAA in the consolidated cases. (Doc. 11.) On August 5, 2013, defendant filed its second motion to dismiss, arguing that plaintiff's claims in this lawsuit were barred by res judicata in light of the AAA's denial of plaintiff's claims. (Doc. 17.) The court granted defendant's motion and dismissed plaintiff's claims. (Doc. 28.) Plaintiff appealed the order, and the Tenth Circuit Court of Appeals reversed the dismissal and remanded for further proceedings on the basis that plaintiff's claims in this lawsuit were not precluded by the arbitrator's final award. (Doc. 49.)

### L.  Ms. Phares's Online Journal

Plaintiff states that at some point, he found Ms. Phares's online journal, which "revealed her attitude toward customers [and] are open to the public on her website." (Doc. 105 at 38.) He states that she wrote the journal entries "when she worked as a clerk in a book store," the "journal entries [were] very disturbing," and "[y]et, employer Dillard's chose to do nothing about carefully supervising and training this employee." (*Id.*) Plaintiff claims that he "has provided documents and evidences [sic] to defendant many times concerning the character of Julia Phares since August 2011."

### M.  Additional Evidentiary Issues

Plaintiff unsuccessfully attempts to controvert a number of facts presented by defendant. For plaintiff's benefit here, the court provides an unexhaustive list of objections that the court overruled and determined did not controvert defendant's evidence. Although the court considered each of plaintiff's objections, it does not list them all here.

| Fact Presented | Objections and Evidentiary Ruling |
|---|---|
| Following the conversation with Ms. Phares, Mr. Peterson did not believe that plaintiff was actually barred from the store. | Plaintiff attempts to controvert this fact by stating that the court should not consider Mr. Peterson's statement because defendant did not produce it during discovery. He also repeats this objection in response to several of defendant's facts. It is unclear whether plaintiff suggests that defendant should have produced Mr. Peterson's affidavit, which he signed on April 14, 2015, after the |

discovery deadline of March 20, 2015, or whether plaintiff suggests that defendant had an obligation to create a document for plaintiff for the purposes of discovery anticipating Mr. Peterson's sworn statement contained in the declaration.  The Federal Rules of Civil Procedure require neither. Plaintiff also says that defendant used Mr. Peterson's testimonies "against plaintiff" at his deposition on February 2, 2015, and that plaintiff "has not been afforded an opportunity to conduct discovery, cross-examination or other investigation" regarding Mr. Peterson's testimony.  The court is not persuaded.  Plaintiff has known about Mr. Peterson's role in this case, he identified Mr. Peterson in the petition, and both parties included Mr. Peterson in their Rule 26 disclosures filed in December 2014.  Plaintiff had until March 20, 2015, over one month after his deposition, to "conduct discovery, cross-examination or other discovery" regarding Mr. Peterson's recollections of his conversation with Ms. Phares.  Plaintiff could have deposed Mr. Peterson, and the other authors of statements to which he makes this objection, but he chose not to do so.

Plaintiff also states that the facts essential to justify plaintiff's opposition are unavailable under Fed. R. Civ. P. 56(d) and asks the court to not consider the paragraph.  Plaintiff repeats this objection in response to several of defendant's facts.  Rule 56(d) states as follows:

**When Facts Are Unavailable to the Nonmovant.**  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) Defer considering the motion or deny it;
(2) Allow time to obtain affidavits or declarations or to take discovery; or
(3) Issue any other appropriate order.

| | |
|---|---|
| | *Id.* To obtain relief under the rule, plaintiff must satisfy several requirements, including explaining by affidavit (1) why facts precluding summary judgment are unavailable; (2) what probable facts he can find through further discovery; and (3) what steps he has taken to obtain such facts. *See Price ex rel. Rice v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). Plaintiff has not provided an affidavit regarding any of the facts to which he objects under this rule, nor has he explained what facts he could discover or what steps he took to obtain the facts. Furthermore, plaintiff provided no authority to support his request that Rule 56(d) contemplates plaintiff's requested relief of striking individual paragraphs in a summary judgment motion filed nearly one month after the discovery deadline. Plaintiff's request does not serve the spirit of Rule 56(d), which provides a "safety valve for claimants genuinely in need of further time to marshal facts, essential to justify their opposition to a summary judgment motion." *In re PHC, Inc. Shareholder Litig.*, 762 F.3d 138, 143 (1st Cir. 2014). Therefore, the court will not strike the facts to which plaintiff objects under this rule. |
| Mr. Peterson, however, was never concerned for plaintiff's safety in coming to a Dillard's store. | Plaintiff attempts to controvert this fact by stating that "It was Peterson who made an urgent call to [plaintiff] in the evening of July 13, 2012. Why did Peterson call so soon if he was not concerned about the safety of plaintiff?" Plaintiff's speculation is insufficient to controvert Mr. Peterson's affidavit regarding his own state of mind. |
| At some point, plaintiff's wife told their family and closest friends that plaintiff was terminated and had been barred from defendant's store. | Plaintiff attempts to controvert this fact by stating that during her deposition, his wife "made many inaccurate, inconsistent or contradictory testimonies, [so] plaintiff is unsure whether the statement stated in this paragraph is accurate." Plaintiff does not provide any evidence to actually controvert the fact, however. Therefore, the court considers it uncontroverted. |
| Plaintiff was recounting [to Ms. Loeffert] that another employee had shared with him that Mr. Macumber was told to resign or retire, and Ms. Loeffert understood | Plaintiff tries to controvert this fact by saying that defendant does not identify the other employee and the statement is inadmissible hearsay. It is inconsequential that defendant does not identify |

| | |
|---|---|
| plaintiff to insinuate that incidents surrounding plaintiff's termination had resulted in Mr. Macumber's being fired. | the other employee, and the court does not agree that the statement is hearsay.  It is not offered for the truth of the matter.  Rather, it is offered to show its impression on Ms. Loeffert. |
| Regardless, Ms. Loeffert stated that she was trying to get him to leave her area, and her opinion was that he should not be in the store for the purpose of disparaging the former store manager. | Plaintiff tries to controvert this fact by saying that Ms. Loeffert never expressed to plaintiff "her opinion was that he shouldn't be in the store for the purpose of disparaging the store manager." This does not controvert the fact.  The statement describes Ms. Loeffert's thought process during the conversation, and whether she communicated it to plaintiff is inconsequential.  Plaintiff also claims that her affidavit was "manufactured by defendant employer," but plaintiff offers no evidence of this, and the court will not strike the fact on that basis.  (Doc. 105 at 20.) |
| Another sales associate, Julie Davis, approached Ms. Loeffert and plaintiff, and observed that Ms. Loeffert was flushed, which concerned her. | Plaintiff attempts to controvert this by saying that he did not observe that Ms. Loeffert was flushed. This does not controvert that Ms. Davis observed that Ms. Loeffert was flushed, so the court will not strike the fact on that basis. |
| Ms. Loeffert thought plaintiff was inappropriate, and she was uncomfortable interacting with him. | Plaintiff tries to controvert this by saying that he did not observe that Ms. Loeffert was uncomfortable interacting with him.  This does not controvert Ms. Loeffert's subjective state of mind. |

## III.  Analysis

Plaintiff brings the following claims against defendant: defamation (Counts I and II), negligent supervision and training (Count III), negligent infliction of emotional distress (Count IV), and retaliation under 42 U.S.C. § 1981 (Count V).

### A.  Defamation (Counts I and II)

In Counts I and II, plaintiff alleges defendant is liable for defamatory statements made by its employees.  In Count I, plaintiff alleges that on July 13, 2012, Dillard's employee Ms. Phares defamed plaintiff by telling Jim Peterson that "[plaintiff] Ivan was told not to enter Dillard's building.  If he comes to Dillard's store, we are supposed to call security."  (Doc. 95 at 8 ¶ 4.a.)  Plaintiff states that because "Dillard's bar[s] no one but shoplifters," Ms. Phares's "slander suggests that plaintiff has done

something terribly wrong." (*Id.*) In Count II, plaintiff alleges that on August 13, 2012, Dillard's employee "Jill Loeffert told plaintiff in front of another associate, Julie Davis, that plaintiff was supposed not to enter Dillard's."[4] (Doc. 95 at ¶ 4(b).) Presumably, plaintiff also argues that Ms. Loeffert's comment "suggests that Plaintiff ha[d] done something terribly wrong."

In order for plaintiff to survive summary judgment on his defamation claim, he must present evidence of the following elements: (1) false and defamatory words; (2) communication to a third party; and (3) resulting harm to his reputation. *Hunter v. The Buckle, Inc.*, 488 F. Supp. 2d 1157, 1178 (D. Kan. 2007) (citing *Hall v. Kan. Farm Bureau*, 50 P.3d 495, 504 (Kan. 2002)). In Kansas, "damage to one's reputation is the essence and gravamen of an action for defamation." *Gobin v. Globe Publ'g Co.*, 649 P.2d 1239, 1243 (Kan. 1982). "Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under [Kansas] law. It is reputation which is defamed, reputation which is injured, reputation which is protected by the laws of libel and slander." *Bosley v. Home Box Office, Inc.*, 59 F. Supp. 2d 1147, 1150 (D. Kan. 1999) (citing *Gobin*, 649 F.2d at 1243). Damages recoverable for defamation cannot be presumed but must be proven.

---

[4] Plaintiff also states that "Both employees urged plaintiff to leave the store immediately." (Doc. 95 at ¶ 4(b).) He later characterizes this as kicking plaintiff out of the store. It is not clear whether plaintiff argues Ms. Loeffert's and Ms. Davis's urging him to leave the store is defamatory, but because the statements were commands, they are not capable of being proven true or false. Although the commands may give rise to other claims, the court does not believe they are defamatory. When considering whether a statement is slanderous, the statement must be capable of being proven true or false. *See Rockgate Mgmt. Co. v. CGU Ins./PG Ins. Co. of N.Y.*, 88 P.3d 798, 806 (Kan. Ct. App. 2004) (applying New York law).

Plaintiff also characterizes Ms. Loeffert's comment as a republication of Ms. Phares's July 13, 2012 comment to Mr. Peterson. No evidence, however, supports this characterization. The uncontroverted facts show that Ms. Phares only made her comment to Mr. Peterson when no other people were near them, and that on August 13, 2012, neither Ms. Loeffert nor Ms. Davis had heard from anyone that plaintiff was barred from the store. Plaintiff only offers speculation in an attempt to controvert Ms. Loeffert's and Ms. Davis's sworn affidavits, which is insufficient to prevent summary judgment. Therefore, the court looks to Ms. Loeffert's comment that plaintiff was "supposed not to enter Dillard's" as a separate alleged slander from Ms. Phares's July 13, 2012 comment.

*Debord v. Mercy Health Sys. of Kan., Inc.*, 860 F. Supp. 2d 1263, 1280 (D. Kan. 2012) (citing *Hall*, 50 P.3d at 504). "Proof of such damages typically entails showing that persons were deterred from associating with the plaintiff, that the plaintiff's reputation had been lowered in the community, or that the plaintiff's profession suffered." *Id.* (citing *Ali v. Douglas Cable Commc'ns*, 929 F. Supp. 1362, 1362 (D. Kan. 1996)).

The parties agree that plaintiff was never actually barred from the store, therefore the alleged comments as plaintiff describes them were false. The parties also agree that statements were made to third parties. In regards to the July 13, 2012 statement, Ms. Phares communicated with Mr. Peterson, and in regards to the August 13, 2012 statement, Ms. Loeffert communicated to plaintiff in front of Ms. Davis. Therefore, the court looks to whether the statements, construed in the light most favorable to plaintiff, are defamatory.

**1. Whether Ms. Phares's or Ms. Loeffert's Alleged Statements Were Defamatory**

Construing the facts in the light most favorable to plaintiff, the court believes a genuine issue of material fact exists whether plaintiff's versions of Ms. Phares's July 13, 2012 statement and Ms. Loeffert's August 13, 2012 statement to plaintiff in front of Ms. Davis that "plaintiff was supposed not to enter Dillard's" are defamatory. A statement is defamatory if the communication would tend to prejudice plaintiff in the eyes of a substantial and respectable minority of the community or plaintiff's associates. *See* Restatement (Second) of Torts § 559, cmt. e. A reasonable jury may conclude that the claimed statements would have the tendency to prejudice plaintiff in the eyes of plaintiff's associates. The question of whether the statement actually *did* lower plaintiff's reputation goes to the issue of damages, not the defamatory nature of the statement. *See id.* at cmt. d. ("To be defamatory, it is not necessary that the communication actually cause harm to another's reputation or deter third persons from associating or dealing with him. Its character depends upon its general tendency to have such an

effect . . . . There is a difference in this respect between determining whether a communication is defamatory and determining whether damages can be recovered.").  Furthermore, even if the statement was an opinion, it could imply "the allegation of undisclosed defamatory facts as the basis for the opinion."  Restatement (Second) of Torts § 566.

### 2.   Whether Plaintiff Can Show Damage to His Reputation

Next, the court looks to whether either comment caused damage to plaintiff's reputation. Defendant argues that the people who heard the comments did not believe them in a defamatory sense. Defendant states that Phares' comment "was not actually understood by the single recipient (Peterson) in a defamatory sense; Peterson's view of Plaintiff did not change."  (Doc. 100 at 14.)  Furthermore, defendant states that "Peterson understood [Phares's] comment to implicate Plaintiff's termination (about which Plaintiff had formerly shared information with Peterson), not criminal conduct."  (*Id.*) As to Ms. Loeffert's comment, Ms. Davis likewise did not believe plaintiff was barred from the store, and she states that her opinion of plaintiff did not change after the discussion with Ms. Loeffert. Furthermore, Ms. Loeffert's opinion of plaintiff did not change after Ms. Davis told plaintiff he should leave.

In response, plaintiff provides an affidavit from Steven B. Finter, who evidently worked with plaintiff at Dillard's about 15 years ago.  (Doc. 105 at 73.)  He attaches an email that he wrote to plaintiff on January 29, 2013, which states the following:

> Hey Ivan,
>
> Was in Dillard's the other day your name came up, and I was told that you had been fired for yelling at another employee.  What is up with that?  How long did you work for them . . .  15 years or so.  I was also told that you are banned from shopping at Dillard's.  Only shoplifters get banned from Dillard's.  I wasnt' [sic] told what happened, but I wouldn't think you cold [sic] get fired for yelling at another employee, well I guess it does have to do with the way you would treat a customer, since that is the business you were in.  So it leads me to think that there was a little more to the story than I was told.  I was going to use you as a personal reference, since I am looking for a

job, but I think it would be best if I didn't.  Sorry Ivan, hope everything works out for you and your family.

Steven

(Doc. 105 at 74.)  Plaintiff suggests that this is proof of damage to his reputation because Mr. Finter did not believe he should use plaintiff as a reference.  Although defendant presented evidence, which plaintiff failed to controvert, that no others were around the parties when the allegedly defamatory statements were uttered, plaintiff asks the court to infer through Mr. Finter's affidavit, that someone, at some time between July 13, 2012 and January 29, 2013, republished Ms. Phares's or Ms. Loeffert's defamatory comments.  Mr. Finter does not know what sales associate told him plaintiff was "banned" from shopping at Dillard's.  Although extremely weak evidence, the court finds this sufficient to create a question of fact regarding whether plaintiff suffered damage to his reputation, particularly in light of Ms. Chen's belief that she relayed to her family and friends, that plaintiff had been asked to leave Dillard's and could never shop there again.[5]  Construing every fact in the light most favorable to plaintiff and granting him every possible favorable inference, the court finds that a genuine issue of material fact exists regarding damage to plaintiff's reputation.

---

[5] Assuming Ms. Chen was the source of a republication that lowered Mr. Finter's view of plaintiff's reputation, it appears plaintiff was responsible for at least some of the republications because he never told Ms. Chen that he was not actually barred from Dillard's, even after defendant's counsel told him so repeatedly.  Although it is true that a defamer is not liable for a one's voluntary republication of a slander concerning himself, construing the facts in the light most favorable to plaintiff, at the time of plaintiff's alleged telephone call with Mr. Peterson, plaintiff did not know whether he was actually barred from Dillard's.  *Cf. Booth v. Elec. Data Sys. Corp.*, 799 F. Supp. 1086, 1091 (D. Kan. 1992) (stating that a plaintiff's truly voluntary communication of a defamatory statement bars all recovery).  If plaintiff did not know whether he was barred from Dillard's at the time of the alleged telephone call, any discussion with Ms. Chen regarding a belief that he was before speaking with defendant's counsel was not voluntary republication because he did not know it was false at the time.  His failure to take remedial efforts later raises a question of fact regarding recoverable damages.

### 3.   Whether the Statements Could Impose Liability on Defendant

Next, the court looks to whether Ms. Phares's or Ms. Loeffert's comments could impart

liability on defendant.  A corporation may be liable for its agents' defamatory utterances that are made

while acting within the scope of their authority.[6]  *Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1293

(Kan. Ct. App. 1984), *aff'd*, 695 P.2d 1279 (Kan. 1985).  Defendant states that in "a retail setting, the

employees have a shared interest in the propriety of those entering their store."  (Doc. 100 at 17.)  The

---

[6] It is not clear whether plaintiff argues that Ms. Phares's and Ms. Loeffert's comments were made outside of the scope of their authority, although he does state that Dillard's "does not have a policy of banning former employees" and "both Phares and Loeffert should or [sic] should not have known that plaintiff was not or should not be barred from Dillard's."  (Doc. 105 at 31.)  The court does not find this argument persuasive to the extent it suggests the comments were made outside the scope of Ms. Phares's or Ms. Loeffert's employment.  First, the precise issue is whether it is within the scope of employment for sales associates to discuss potential security issues or tell customers they are not supposed to be in the store.  Plaintiff provides unauthenticated letters purportedly sent from defendant's legal department to Ms. Phares when Ms. Phares requested defendant to provide representation for her in regards to plaintiffs lawsuits again her.  The court does not consider the letters because they are inadmissible evidence.  Even if the court did consider the letters, however, they do not support plaintiff's theory that the statements were made outside of the scope of the sales associates' employment.

The letters show dates of September 7, 2012 and September 21, 2012 (after the alleged slanders), and both simply instruct Ms. Phares to leave the sales floor and inform a manager if plaintiff comes into the store and makes her uncomfortable.  The letters do not suggest that Ms. Phares, at the time of her comment to Mr. Peterson, was acting outside the scope of her authority.  Nor do the letters concern Ms. Loeffert at all, or support a finding of malice.  Second, other than through his claim of negligent supervision and training, plaintiff offers no legal authority in support of his "argument" that defendant could somehow be liable for the defamatory statements of its employees made outside of the scope of its employees' authority.  *See Gabbard v. Sharp*, 205 P.2d 960, 962 (Kan. 1949) ("[T]he general, well established, rule is that while an employer may be held liable to one of his employees for wrongful acts of a fellow servant done in the pursuance of the objects of his employment and in furtherance of his duties, he is never liable for such acts when they are committed outside the scope of such servant's employment.") (internal citations omitted).  Plaintiff has not sued Ms. Phares or Ms. Loeffert in this case, the court will not advocate on plaintiff's behalf, and the court discusses plaintiff's claim for negligent supervision and training later in this opinion.

court agrees, and as such, Ms. Phares's and Ms. Loeffert's comments were made within the scope of their employment.[7]

### 4.  Whether the Statements Were Protected by a Qualified Privilege

Next, assuming the comments were made within the scope of Ms. Phares's and Ms. Loeffer's employment, the court looks to whether the comments were protected by a qualified privilege.  A communication is qualifiedly privileged if it is made in good faith on a subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or duty.  "Whether an allegedly defamatory statement is privileged, either absolutely or qualifiedly, is a question of law to be decided by the court when the evidence is undisputed."  *Redmond v. City of Overland Park*, 672 F. Supp. 473, 487 (D. Kan. 1987).  The essential elements of a qualifiedly privileged communication are good faith, an interest to be upheld, a statement limited in its scope to the upholding of such interest and publication in a proper manner only to proper parties.  *Luttrell*, 683 P.2d at 1294 (quoting *Dobbyn v. Nelson*, 579 P.2d 721, 723 (Kan. Ct. App. 1978), *aff'd*, 587 P.2d 315 (Kan. 1978)).

Ms. Phares's alleged comment regarding whether a potential security matter in defendant's store warranted calling security was made to the proper party—the employee who had seen plaintiff in the store, but who had not called security.  Construing the facts in the light most favorable to plaintiff, by Ms. Phares's restricting her comment to Mr. Peterson, her fellow sales associate, the statement was limited in its scope to the upholding of such an interest and to a proper party with a corresponding interest.  Ms. Loeffert's comment that "plaintiff was supposed not to enter Dillard's" likewise concerned a potential security issue, and she made the comment only to plaintiff and another sales

---

[7] To the extent the comments exceeded the scope of Ms. Phares's and Ms. Loeffert's employment, such claims fall under plaintiff's claim for negligent training and supervision, which are discussed later in this opinion.

associate, who had a corresponding duty to address security matters.  Therefore, in the case of each allegedly defamatory statement, the sales associates' comments among each other regarding whether plaintiff was allowed in the store or whether plaintiff posed a potential security threat were qualifiedly privileged.

To overcome a qualified privilege, plaintiff must present evidence that defendant acted with malice, or knowledge of falsity or reckless disregard for the truth.  *Scarpelli v. Jones*, 626 P.2d 785, 790 (Kan. 1981).  "Although the question of actual malice is normally one of fact, it may under some circumstances be an appropriate subject of a motion for summary judgment.  *Booth v. Elec. Data Sys. Corp.*, 799 F. Supp. 1086, 1091 (D. Kan. 1992).  Here, plaintiff provides absolutely no evidence and only speculation regarding actual malice.[8]  This is insufficient to overcome the qualified privilege, and summary judgment is therefore proper.  The court grants defendant's motion for summary judgment as to Counts I and II, plaintiff's claims of defamation.

### B.  Negligent Supervision and Training (Count III)

In the pretrial order, plaintiff claims as follows:

Since August 2011, plaintiff has provided documents and evidence to defendant many times concerning the character of Julia Phares and her multiple violations of Dillard's work rules.  Defendant had been provided the entire 96 entries of Phares's journal.  Defendant had known about Phares's shady background and work behaviors.  Yet,

---

[8] Plaintiff suggests that the following supports the malice element of Ms. Phares's remark:  "Plaintiff believes that Phares made her July 13's [sic] defamatory remark partly because of her evil personality and partly because of her clear intent to retaliate against plaintiff for bringing up sexual harassment and racial discrimination charges against her in the lawsuit with Dillard's under Title VII and Section 1981."  (Doc. 105 at 53.)  He states that Ms. Phares was angry and hurt to find out that plaintiff was suing her and Dillard's, and she wrote in a letter to Dillard's that "I do not understand much of Mr. Chen's 'petition.'  It makes wild and absurd claims about me and my life that have nothing to do with his termination.  They are extremely disconcerting and hurtful."  (Doc. 105 at 52.)  Therefore, plaintiff argues, Ms. Phares was "ready to retaliate against plaintiff," and as soon as she heard that plaintiff had shopped in the store on July 13, 2012, "she couldn't help to make [sic] a slander against Chen without any evidence."  While the evidence supports that Ms. Phares was confused and bothered by plaintiff's claims against her, retaliation does not necessarily flow from confusion and unease.  Therefore, plaintiff's speculation does not support a finding of malice regarding Ms. Phares's comment.

defendant failed to take corrective disciplinary actions and continued to allow this employee to make defamatory statement about the customers.

After Phares made the slander against plaintiff on July 13, 2012 and after plaintiff made complaints to Dillard's counsel and management, store management has not provided any remedial or preventative measure to ensure that similar incidents would not reoccur. As a result of employer negligence, the rumor that plaintiff has been banned from Dillard's continued to spread throughout the store. Consequently, plaintiff was kicked out of the store on August 13, 2012 by two other employees, one month after Phares published the original defamatory remark.

(Doc. 95 at 9–10 ¶ 4.a.)

Negligent supervision is a recognized cause of action under Kansas law. *Marquis v. State Farm Fire & Cas. Co.,* 961 P.2d 1213, 1222 (Kan. 1998). "Negligent supervision includes not only the duty to supervise but also includes the duty to control persons with whom the defendant has a special relationship including the defendant's employees or persons with dangerous propensities." *Id.* at 1223 (citing *Nero v. Kan. State Univ.,* 861 P.2d 768 (Kan.1993); *C.J.W. v. State,* 853 P.2d 4, 4 (Kan.1993)). To subject an employer to liability on a negligent supervision claim,

plaintiff must show "some causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person; the employer must, by virtue of knowledge of [its] employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within the risk created by the known propensity . . . ."

*Kan. State Bank & Trust Co. v. Specialized Transp., Servs., Inc.*, 819 P.2d 587, 596 (Kan. 1991) (quoting *Hollinger v. Stormont Hosp. & Training Sch. for Nurses,* 578 P.2d 1121 (Kan. Ct. App. 1978)).

Defendant argues that plaintiff's claim of negligent training and supervision fails as a matter of law because plaintiff has failed to allege and prove a physical injury. Plaintiff responds that "Kansas has neither defined nor established what would constitute the least physical injury one could have to maintain a cause of action for [negligence]." In his briefing and affidavit, plaintiff says that, although

he "claimed no bodily harm, he [is] unsure whether he will be diagnosed with some forms of physical injury in the future."  (Doc. 105 at 46.)  He says he has manifestations of physical injury including "loss of appetite, sleeplessness, nightmares, anxiety, difficulty [concentrating,] and other forms of depression."  (*Id.*)  He says he suffers from "stomach pain or discomfort from time to time, probably caused by anxiety, nervousness, stress and irritability."  (*Id.*)  He says he has been taking over the counter medicines such as antacids and Seirogan pills.  (*Id.*)

It is undisputed that Ms. Phares, Ms. Loeffert, and Ms. Davis did not physically injure plaintiff on July 13 and August 13, 2012.  Therefore, what is at issue is whether plaintiff could recover damages for his alleged physical manifestations under a negligence theory pursuant to Kansas law.

"It has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant unless it is accompanied by or results in physical injury to the plaintiff."  *Hoard v. Shawnee Mission Med. Ctr.*, 662 P.2d 1214, 1219–20 (Kan. 1983) (citations omitted).  Decisions from this court and Kansas courts establish that all of plaintiff's alleged physical manifestations amount to emotional harm.  *See Patton v. Entercom Kansas City, L.L.C.*, No. 13-2186-DDC-JPO, 2014 WL 2557908, at *10–12 (D. Kan. June 6, 2014) (rejecting plaintiff's negligent supervision claim where plaintiff alleged she felt upset, shaken, embarrassed, humiliated, and insulted, and that she experienced sleeplessness, anxiety, shortness of breath, and feeling more emotional and irritable) (citing *Schweizer-Reschke v. Avent, Inc.*, 874 F. Supp. 1187, 1196–97 (D. Kan. 1995) (rejecting plaintiff's claim for negligent infliction of emotional distress where plaintiff alleged she suffered vomiting, diarrhea, anxiety, shortness of breath, rapid heartbeat, and tightness of breath); *Anderson v. Scheffler*, 752 P.2d 667, 669 (Kan. 1988) (holding that plaintiff's suffered shock, emotional pain, feelings of guilt, recurring nightmares, and a doctor's visit for depression did not show "actual physical impact" sufficient for claim of negligent infliction of

emotional distress"); *Hopkins v. State*, 702 P.2d 311, 319–20 (Kan. 1985) (holding that generalized physical symptoms of emotional distress, like headaches, insomnia, and general physical upset, are insufficient to state a cause of action for negligent infliction of emotional distress)).  Although plaintiff argues that it is unclear what would constitute the least physical injury one could have to maintain a cause of action for negligence, it is clear that plaintiff's "generalized complaints are insufficient to create an issue of fact regarding actual physical injury under Kansas law." *Schweizer-Reschke*, 874 F. Supp. at 1196–97.  Because the court grants summary judgment on this basis, the court will not rule on defendant's argument that plaintiff otherwise fails, nor will it discuss plaintiff's claims that defendant knew Ms. Phares had "a nasty habit of making defamatory remarks about customers."  (Doc. 105 at 35, 46.)[9]  Therefore, the court grants defendant's motion for summary judgment as to Count III, plaintiff's claim for negligent supervision or training.

## C. Employer Negligent Infliction of Emotional Distress (Count IV)

The Pretrial Order claims as follows:

> Because of employer's negligence [sic] plaintiff has suffered emotional damages resulting from the two slanders and mistreatment such as being kicked out of the store. Plaintiff is entitled relief [sic] for defendant's negligent infliction of emotional distress under Kansas Statute[s] Annotated Chapter 60.

Pretrial Order (Doc. 95) at 10 ¶ 4.a.  As noted above, fatal to plaintiff's claim is a complete lack of allegations or evidence of a physical injury.  All of plaintiff's claimed damages are for "emotional harm," which is not actionable on a negligence theory in Kansas.  *See Patton*, 2014 WL 2557908, at

---

[9] The court does note, however, that plaintiff's allegations are inflammatory, and most are immaterial to his claims.  He insults Ms. Phares repeatedly throughout his briefing, saying she has a "shady background" and quoting from an unauthenticated "online journal," which plaintiff purports is Ms. Phares's, discussing its author's exotic dancing.  Such "evidence" has nothing to do with the claims in this case.  Even if Ms. Phares was the author of the online journal and defendant knew about it, a propensity to be an exotic dancer does not put defendant on notice that Ms. Phares might someday falsely tell another employee that a customer is not allowed in the store and they are supposed to call security.  Plaintiff's inclusion of the material is entirely inappropriate and unnecessary.

*11–12.  Therefore, the court grants defendant's motion for summary judgment as to Count IV,

plaintiff's claim for negligent infliction of emotional distress.

> **D.  Violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981) (Count V)**

> In the pretrial order, plaintiff alleges as follows:

>> Section 1981 authorizes retaliation claims.  Dillard's terminates a considerable number of employees every year.  Defendant admits the annual attrition rate at Dillard's Oak Park Mall is over fifty percent.  None of the employees except plaintiff has been defamed.  Any reasonable person would believe or suspect that the illegal acts against plaintiff have something to do with his discrimination lawsuit against Dillard's, including a claim under 42 U.S.C. § 1981.  The store manager discussed with Dillard's employees about plaintiff and his lawsuits but would not tell employees to refrain from defaming plaintiff.  The store management could have prevented plaintiff from being slandered and kicked out of the store, but they retaliated against plaintiff by doing nothing to protect plaintiff.  Due to defendant's retaliation, plaintiff was allowed to be defamed and kicked out of the store by Dillard's employees.  Plaintiff has suffered emotional distress damages and is entitled relief under Section 1981.

(Doc. 95 at 10–11 ¶ 4.a.)  Plaintiff argues in the pretrial order that defendant retaliated against him

when it did not protect plaintiff from its employees allegedly defaming him and kicking him out of the

store.  (*Id.*)  Plaintiff further explains in his briefing the contractual basis of his Section 1981 claim by

stating that he filed his claims against Dillard's and Ms. Phares in 2012, including a claim under

Section 1981.  This court ordered arbitration pursuant to an arbitration agreement plaintiff entered into

as a condition of his employment.  (Doc. 105 at 50–51.)  Plaintiff states that "[a]ny reasonable person

would believe or suspect that the defamation against plaintiff Chen has something to do with his

discrimination lawsuit against Dillard's."[10]  (*Id.* at 54).  Plaintiff states that "Employer Dillard's on the

---

[10] Plaintiff also states that that "[t]he only thing that employer could do to further punish plaintiff was depriving his right to shop at Dillard's," which suggests that defendant did prevent plaintiff from shopping in the store.  (Doc. 105 at 51.)  Plaintiff provides absolutely no evidence that ever prevented plaintiff from shopping at Dillard's.  Ms. Phares did not prevent defendant from shopping at Dillard's.  Ms. Phares did not call security, and security did not escort plaintiff out of the store.  In fact, the entire basis for plaintiff's defamation claims was that Ms. Phares *untruthfully* said that plaintiff was not allowed in the store.  Therefore, the court does not address this argument.  To the extent plaintiff argues that the alleged republication of the defamatory statement and Ms. Loeffert's telling plaintiff he

other hand owed plaintiff a duty to honor the agreement without punishing him for filing the claims. Defendant, however, breached the contract by retaliating against plaintiff." (*Id.* at 51.) Plaintiff argues in his opposition to defendant's motion for summary judgment that "[t]he only thing that employer could do to further punish plaintiff was depriving his right to shop at Dillard's." (*Id.* at 51.)

Presumably, here plaintiff implies that defendant prevented plaintiff from shopping at Dillard's, which plaintiff admits defendant told him was not true. Plaintiff then states that "[t]here was a chance that plaintiff Chen's employment could be reinstated if he prevailed in the legal process." (*Id.* at 51.) Presumably plaintiff is arguing that, depending on the outcome of the arbitration, Dillard's may have been ordered through arbitration to reinstate his employment, and that by "kicking him out of the store" or failing to prevent him from being defamed, Dillard's interfered with plaintiff's arbitration agreement. Plaintiff states that "Any reasonable person would believe or suspect that the defamation against plaintiff Chen has something to do with his discrimination lawsuit against Dillard's. Due to defendant's retaliation, plaintiff was allowed to be defamed by Dillard's employees." (*Id.* at 54.)

### 1. Whether Plaintiff Claims Interference with a Contract under § 1981

Claims under § 1981 arise when there is a racially motivated interference with a contract. A § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *See Wesley v. Don Stein Buick, Inc.*, 42 F. Supp. 2d 1192, 1200 (D. Kan. 1999) (citing *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989)); *see also Phelps*, 886 F.2d at 1267 (emphasizing that actual loss is protected by § 1981, not possible loss); *Morris v. Office Max, Inc.*, 89 F.3d 411, 414–15 (7th Cir. 1996) ("A claim for interference with the right to make and enforce a contract must allege the actual

---

should leave is the equivalent of "kicking him out" of the store, his claim fails as discussed in this opinion.

loss of a contract interest, not merely the possible loss of future contract opportunities.") (citing *Phelps*, 886 F.2d at 1267).

Here, the parties agree there was an arbitration contract.  It is unclear, however, how plaintiff's being "kicked out" of defendant's store (if the facts could be so characterized) could discourage him from exercising his right to arbitrate under the arbitration agreement.  Furthermore, plaintiff offers no evidence that the arbitrator might order Dillard's to rehire plaintiff upon successful arbitration, nor has plaintiff offered any evidence that but for the alleged defamations, the arbitrator would have ordered Dillard's to rehire plaintiff or that Dillard's would have rehired plaintiff on its own volition.   Plaintiff did not even include in his prayers for relief that defendant rehire him in the two cases that were submitted to arbitration.  (*See* Doc. 1-1 in Case No. 12-2517; Doc. 1-1 in Case No. 12-2366.) Therefore, the court doubts that plaintiff has made a proper showing that defendant or defendant's employees interfered with the making or enforcement of the arbitration contract.  Regardless, even if the court very liberally construes the facts to support an inference that Ms. Loeffert's or Ms. Davis's telling plaintiff to leave the store denied plaintiff his right to make a contract to purchase merchandise, plaintiff's claim fails.  *See Wason v. Fraternal Order of Eagles*, 915 F.2d 235, 243 (6th Cir. 1990) (discussing that refusing service or asking one to leave an establishment to avoid having to contract could fall under §1981).

## 2.   Whether Plaintiff Can Show a Prima Facie Case of Retaliation

Plaintiff establishes a prima facie case of retaliation by showing (1) he engaged in protected opposition to discrimination; (2) he was subject to adverse action; and (3) a causal connection exists between the protected activity and the adverse action.  *Perry v. Woodward*, 199 F.3d 1126, 1141 n.12 (10th Cir. 1999).  If the plaintiff is able to establish a prima facie case of retaliation, it becomes defendant's burden to prove by a preponderance of the evidence that a legitimate, nondiscriminatory

reason for the adverse action supported its decision.  *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1128 (10th Cir. 1993) (quoting *Sorensen v. City of Aurora*, 984 F.2d 349, 353 (10th Cir. 1993).  Once the employer has dispelled an inference of retaliation by establishing a legitimate reason, plaintiff may still prevail if he demonstrates that the articulated reason was a mere pretext for discrimination.  *See Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1103 (10th Cir. 1998).

Plaintiff suggests the protected activity was either (1) arbitrating his employment disputes pursuant to an arbitration agreement or (2) the filing of his other two lawsuits, which alleged race discrimination.  Plaintiff claims the adverse action was defendant's failure to "do anything" to prevent the alleged defamation by one sales associate and getting "kicked out" of the store by another.  Plaintiff argues that store management could have prevented the incidents by "announcing to its employees that plaintiff Chen was not banned from Dillard's, or simply by announcing the company's trespassing policy in general."  (Doc. 105 at 54.)  Plaintiff states that "Dillard's terminates a considerable number of employees every year.  Not every one of those employees has been defamed.  Any reasonable person would believe or suspect that the defamation against plaintiff Chen has something to do with his discrimination lawsuit against Dillard's.  Due to defendant's retaliation, plaintiff was allowed to be defamed by Dillard's employees."  (*Id.*)

To the extent plaintiff alleges the protected activity was arbitrating his employment disputes, his claim fails because he cannot show a causal connection between seeking to arbitrate his claims and the adverse action.  The incidents at issue occurred on July 13, 2012 and August 13, 2012.  Plaintiff filed his notice to arbitrate his claims in the related litigation on October 18, 2012, *after* the allegedly retaliatory action.  (*See* Doc. 28 at 2.)  By its nature, retaliation must occur after the protected activity, not before.  Therefore, it is impossible for plaintiff to make any showing of causation as a result of enforcing the arbitration agreement.

**3.   Whether Defendant Presents a Legitimate, Non-Retaliatory Reason for the Alleged "Adverse Action"**

To the extent plaintiff argues that the protected activity was filing his lawsuits in the District Court for Johnson County, Kansas, his claims also fail.  Even if plaintiff could make a prima facie case of retaliation, which is doubtful, defendant articulates a legitimate, nondiscriminatory reason for the "adverse action" of not telling all of the employees that plaintiff was allowed to shop in the store. Defendant did not know and had no reason to believe that Ms. Phares's statement had been published to anyone other than Mr. Peterson, and defendant had no reason to believe that Ms. Loeffert's statement was heard by anyone other than plaintiff and Ms. Davis.  Ms. Loeffert states she thought plaintiff should not be in the store saying the things he was saying about Mr. Macumber, and she only wanted plaintiff to leave her area.  Ms. Davis observed that Ms. Loeffert was upset and flushed, and she wanted plaintiff to leave Ms. Loeffert alone.  Defendant provided evidence that it spoke with Ms. Loeffert and Ms. Davis and reiterated that plaintiff was allowed to shop in the store.  Defendant learned that neither Ms. Loeffert nor Ms. Davis had heard that plaintiff was barred from the store, so defendant had no reason to announce that plaintiff was not barred to all of the sales associates in the store.  Defendant told the involved employees as soon as possible that plaintiff was not barred from shopping at Dillard's.  Plaintiff has provided no admissible evidence that suggests defendant's proffered reason is pretext for retaliation.  Therefore, plaintiff's retaliation claim fails as a matter of law.

**4.   Whether Plaintiff Can Show Disparate Treatment**

Although the pretrial order only alleges retaliation under § 1981, by stating that defendant's Overland Park Store "has a history of discriminating against minority shoppers," plaintiff suggests a cause of action by disparate treatment, which likewise fails as a matter of law.  (Doc. 105 at 54.)   To establish a prima facie case of disparate treatment in cases such as this, plaintiff must show that (1) he

belongs to a protected class, (2) he suffered an adverse employment action, and (3) defendant treated similarly situated employees differently.  *See Hysten v. Burlington N. & Santa Fe. Ry. Co.*, 167 F. Supp. 2d 1239, 1243 (D. Kan. 2001) (*aff'd* 296 F.3d 1177 (10th Cir. 2002)) (citing *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998)).

Assuming plaintiff belongs to a protected class and can meet the other elements of a prima facie case of disparate treatment, defendant provides a legitimate, non-discriminatory reason for its actions related to plaintiff's complaints, as explained above.  For the same reasons already stated, plaintiff fails to show pretext.  Therefore, to the extent plaintiff brings a disparate treatment claim under § 1981, it also fails as a matter of law.  For these reasons, the court grants defendant's motion for summary judgment as to Count V, plaintiff's claim for violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 99) is granted.  All of plaintiff's claims are dismissed.

The case is closed.

Dated this 8th day of January, 2016 at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**